# FEDERAL POWER COMMISSION *v.* COLORADO INTERSTATE GAS CO.

No. 45.  Argued January 31, 1955.—Decided March 28, 1955.

*Assistant Attorney General Burger* argued the cause for petitioner. With him on the brief were *Solicitor General Sobeloff, Melvin Richter, Willard W. Gatchell, Lambert McAllister* and *Jacob Goldberg.*

*James Lawrence White* argued the cause for respondent. With him on the brief were *William A. Dougherty, John P. Akolt, Sr., John R. Turnquist, Charles E. McGee* and *Lewis M. Poe.*

MR. JUSTICE BURTON delivered the opinion of the Court.

The principal question before us is whether, on a petition to review a natural gas rate reduction order of the Federal Power Commission, a Court of Appeals may consider, *sua sponte,* an objection which has not been urged before the Commission in the application for rehearing prescribed by § 19 of the Natural Gas Act.[1] Alterna-

---

[1] 52 Stat. 831–832, as amended, 15 U. S. C. § 717r. The material provisions of § 19 (a) and (b) are set forth in the body of this opinion at p. 497, *infra.* For related litigation not material to the issues now presented, see *Colorado Interstate Gas Co.* v. *Federal Power Commission,* and *Canadian River Gas Co.* v. *Federal Power Commission,* 324 U. S. 581, and *Colorado-Wyoming Gas Co.* v. *Federal Power Commission,* 324 U. S. 626.

tively, a question also is raised whether, in such a rate proceeding, a Court of Appeals may invalidate, *sua sponte,* an existing order of the Commission, which prohibits the inclusion of certain operating expenses of the natural gas company in its cost of service, where such order not only has been proposed and acquiesced in by the company, but has been imposed on it by the Commission as a condition of a merger under which the company is operating. For the reasons hereafter stated, we answer each of these questions in the negative.

In 1948, the Federal Power Commission, petitioner herein, instituted a rate investigation against respondent, the Colorado Interstate Gas Company, under § 5 (a) of the Natural Gas Act, 52 Stat. 823–824, 15 U. S. C. § 717d (a). While this was pending, respondent and the Canadian River Gas Company filed a joint application under § 7 of the same Act, 52 Stat. 824–825, as amended, 15 U. S. C. § 717f. That application sought a certificate of public convenience and necessity permitting respondent to merge with the latter company, acquire and operate its properties, and construct additional facilities. Objection was made that consumers, receiving natural gas from respondent, might be forced by this merger to share respondent's loss if the costs of certain gasoline operations to be undertaken by it exceeded its revenues from them. To meet this objection, respondent proposed that the Commission, in any natural gas rate proceeding, exclude such loss from the company's cost of service.[2]

March 1, 1951, the Commission wrote in the above proposal as a condition of its certification of the merger. 10

---

[2] The proposal in respondent's letter of June 8, 1950, to the Commission, was that "in order to keep a rate payer from meeting this deficiency the Commission could condition the certificate of public convenience and necessity so as in effect to provide that such deficit would not be considered in determining reasonable rates. In other words, the stockholders of Colorado Interstate Gas Company would take the risk as to whether or not gasoline prices will go down."

F. P. C. 105, 778.[3]   No review was sought.   The merger was consummated and respondent has enjoyed its benefits since December 31, 1951.

The rate investigation was resumed in 1951 and the year 1952 became the test year.   The usual intermediate decision was omitted and, on August 8, 1952, the Commission issued its findings and rate order.   95 P. U. R. (N. S.) 97.   In that proceeding, respondent had argued for a "volumetric" allocation of gasoline costs which, in 1952, would result in a showing of no loss suffered by it from the gasoline operations in question.   The Commission, however, had declined to adopt that method and had applied. a "relative market value method" of allocating costs.   This showed a loss of $421,537 from such operations and, pursuant to its merger order, the Commission held that such loss "shall not be considered as a part of the cost of service which we have heretofore determined." On that basis, the Commission found respondent's total cost of service, in 1952, to be $14,952,567, including federal taxes of $185,599 and the proceeds of a 5.75% rate of return ($3,280,317 on a rate base of $57,048,988).   De-

---

[3] "(i) The authorization herein granted for effectuating the acquisition and operation of Canadian's properties and facilities is upon the express understanding and condition that if, as a result of carrying out the terms and conditions in the transaction proposed as a part of the acquisition and merger of Canadian into Colorado whereby rights to liquid hydrocarbons in place are granted to Southwestern Development Co. and whereby Colorado is to receive 50 percent of the gross proceeds from the sale of certain liquid hydrocarbons and 15 percent of the net revenue to be received by Colorado from the hydrocarbons resulting from the operation of Fritsch Natural Gasoline Plant of Texoma Natural Gas Co., the costs properly allocable to such hydrocarbons exceed the amounts payable to Colorado pursuant to such transaction, *then and in that case in any proceeding in which the effective or proposed rates of Colorado are under inquiry such excess shall not be considered as a cost of service to Colorado's natural gas customers and consumers."*   (Emphasis supplied.)   10 F. P. C., at 780.

ducting that cost from its gas service revenues of $17,-962,532 left respondent with excess revenues of over $3,000,000. The Commission accordingly ordered a rate reduction eliminating that excess. *Id.,* at 127.

Respondent applied for a rehearing pursuant to § 19 (a) of the Natural Gas Act. The application stated respondent's objections to the Commission's allocation of the expense of the gasoline operations and a claim that, if the costs were properly allocated, there would be no resulting loss. Respondent complained further that the Commission's computation, in effect, reduced the company's rate of return from 5.75% to 5.01%. At no point did respondent contend that the Commission's order excluding respondent's loss from gasoline operations from its cost of service was invalid. Upon consideration of the application, the Commission denied the rehearing and modified the new rates only to a slight degree not material here.

On respondent's petition for review by the Court of Appeals for the Tenth Circuit, that court generally upheld the Commission's findings and order. It accepted the Commission's method of allocating respondent's gasoline costs and the computation which fixed the resulting loss at $421,537. However, the court held, *sua sponte,* that, despite the action taken in the merger proceeding, this loss must be added to respondent's cost of service. The court therefore reversed the Commission's order and remanded the cause for further proceedings. 209 F. 2d 717. After reargument, the court reaffirmed its position. 209 F. 2d 732. Recognizing the importance of such a result in relation to the judicial review of administrative orders, we granted the Commission's petition for certiorari but denied respondent's cross-petition. 347 U. S. 1009; 348 U. S. 818, 884. 28 U. S. C. § 1254 (1); 52 Stat. 831–832, 15 U. S. C. § 717r (b).

The Natural Gas Act prescribes explicitly the procedure to be followed by any person seeking judicial review of an order of the Federal Power Commission, and limits the scope of that review as follows:

"SEC. 19. (a) Any person . . . aggrieved by an order issued by the [Federal Power] Commission in a proceeding under this Act to which such person . . . is a party may apply for a rehearing within thirty days after the issuance of such order. The application for rehearing shall set forth *specifically* the ground or grounds upon which such application is based. . . . *No proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon.*

"(b) . . . *No objection to the order of the Commission shall be considered by the court [of Appeals] unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do. . . .*" (Emphasis supplied.) 52 Stat. 831–832, 15 U. S. C. § 717r (a) and (b).

Respondent first contends that its application for a rehearing by the Commission did, in substance, object to the validity of the merger condition and thus did meet the requirements of § 19 (b). We find, however, that in such application, respondent objected to the exclusion of the loss of $421,537 from gasoline operations merely on the ground that the Commission's certificate approving the merger required a "proper allocation" of the costs, and that the method of allocation chosen by the Commission was not "proper." Respondent also unsuccessfully proposed an alternative method of allocation, which would eliminate the loss. In passing upon these contentions, the Commission assumed, as did respondent, that any properly

computed loss resulting from the gasoline operations was to be excluded from the cost of service. Respondent's objection thus gave no notice that respondent was attacking the validity of the merger condition. The same is true of respondent's objection to the Commission's treatment of its income taxes, and of respondent's claim that the ultimate effect of the Commission's order was to reduce its net share of the proceeds of the rate of return from one of 5.75% to one of 5.01%. These were bids for a higher rate of return or for a recomputation of the loss from the gasoline operations, not claims that the merger condition was invalid.

Respondent's second and principal contention is that, although its application did not meet the requirements of § 19 (b) and *it* therefore is barred from attacking the validity of the merger condition in the Court of Appeals, nothing precludes that court itself from raising, considering and sustaining the same objection, *sua sponte*. Respondent's error appears on the face of the statute. Section 19 (a) first precludes the *bringing* of any proceeding in a Court of Appeals to review an order of the Commission, *unless the person bringing it previously has applied to the Commission for a rehearing on that order*. Section 19 (b) then expressly precludes the *consideration* by the court of any objection to an order of the Commission, *unless the objection shall have been urged before the Commission in the application for rehearing*. As the court is thus expressly *precluded from considering* an objection when, without prior application to the Commission, that objection is presented to the court by the party directly aggrieved,[4] it cannot be assumed that Congress intended to *permit* the same court to consider the

---

[4] ". . . Petitioner, moreover, failed to object in its application for rehearing before the Commission to the inclusion of its producing properties and gathering facilities in the rate base. It is accordingly precluded by § 19 (b) of the Act from attacking the order of the

same objection, under the same circumstances, *sua sponte*, merely because the objection was *not* presented to the court by the party aggrieved. Section 19 (b) reflects the policy that a party must exhaust its administrative remedies before seeking judicial review. To allow a Court of Appeals to intervene here on its own motion would seriously undermine the purpose of the explicit requirements of § 19 (b) that objections must first come before the Commission.

Section 10 (e) of the Administrative Procedure Act does not require a different result.[5] That Act purports to

Commission on the ground that they are included." *Panhandle Co.* v. *Federal Power Commission,* 324 U. S. 635, 649, and see 650–651. See also, *Labor Board* v. *Cheney Lumber Co.,* 327 U. S. 385, 388–389, and *Labor Board* v. *Seven-Up Co.,* 344 U. S. 344, where failure to preserve the issue by objection before the agency was treated as a bar to the judicial consideration of it.

[5] "SEC. 10. *Except so far as (1) statutes preclude judicial review* or (2) agency action is by law committed to agency discretion—

"(e) SCOPE OF REVIEW.—So far as necessary to decision *and where presented* the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of any agency action. It shall (A) compel agency action unlawfully withheld or unreasonably delayed; and (B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; (5) unsupported by substantial evidence in any case subject to the requirements of sections 7 and 8 or otherwise reviewed on the record of an agency hearing provided by statute; or (6) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court. In making the foregoing determinations the court shall review the whole record or such portions thereof as may be cited by any party, and due account shall be taken of the rule of prejudicial error." (Emphasis supplied.) 60 Stat. 243–244, 5 U. S. C. § 1009 (e).

strengthen, rather than to weaken, the principle requiring the exhaustion of administrative remedies before permitting court review. The Senate Committee, recommending the bill for that Act, said:

"A party cannot wilfully fail to exhaust his administrative remedies and then, after the agency action has become operative, either secure a suspension of the agency action by a belated appeal to the agency, *or resort to court without having given the agency an opportunity to determine the questions raised. If he so fails he is precluded from judicial review by the application of the time-honored doctrine of exhaustion of administrative remedies. . . .*" (Emphasis supplied.) S. Doc. No. 248, 79th Cong., 2d Sess. 289, n. 21.

Furthermore, § 10, by its own terms, is made inapplicable in "so far as (1) statutes [as here] preclude judicial review," and § 10 (e) applies only to situations where the question at issue has been properly "presented," as has not been done here. It is not a reasonable interpretation of the general terms of that Act to hold that they repeal the administrative procedures specifically set forth in the Natural Gas Act.

"We have recognized in more than a few decisions, and Congress has recognized in more than a few statutes, that orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts." *United States* v. *Tucker Truck Lines,* 344 U. S. 33, 36–37. See also, *Riss & Co.* v. *United States,* 341 U. S. 907; *Wong Yang Sung* v. *McGrath,* 339 U. S. 33; *United States* v. *Capital Transit Co.,* 338 U. S. 286, 291; *Unemployment Compensation Commission* v. *Aragon,* 329 U. S. 143, 155.

The necessity for prior administrative consideration of an issue is apparent where, as here, its decision calls for the application of technical knowledge and experience not usually possessed by judges. The Federal Power Commission is an administrative agency the decisions of which involve those difficult problems of policy, accounting, economics and special knowledge that go into public utility rate making. For reviewing a rate made by the Federal Power Commission, the Court of Appeals has no inherent suitability comparable to that which it has for reviewing the judicial decisions made by a United States District Court.

Respondent further suggests that to limit the judicial review of the Court of Appeals to those objections which have been urged specifically before the Commission prevents that court from reviewing effectively the "end result" of the rate order. See *Federal Power Commission v. Hope Natural Gas Co.*, 320 U. S. 591. To accept that argument would wipe out at a single stroke the expressly prescribed policy of § 19 (b). Not only would such acceptance be contrary to the terms of the statute, but it would fail to recognize the fundamental consideration that it is not the function of a court itself to engage in rate making.

Returning to the language of § 19, we hold that the Court of Appeals does not here have authority, either under § 19 or *sua sponte*, to reverse the Commission by overruling its exclusion of $421,537 of gasoline production expense from respondent's cost of service for rate purposes.

As an alternative ground for reversal, the Commission also contends that the Court of Appeals is here precluded from redetermining the validity of the merger condition because of respondent's and the Commission's previous conduct in approving it. Cf. *United States* v. *Hancock Truck Lines*, 324 U. S. 774, 778–780. In 1950, respondent proposed this condition in its merger proceeding.

That merger had many facets and a difference of opinion existed within the Commission on its merits. 10 F. P. C. 105, 119. In 1951, the condition before us became an important factor in securing the Commission's finding that the merger would be in the public interest. *Id.*, at 780. After the merger was approved on that condition, respondent sought no review of it. On the other hand, respondent consummated the merger and has enjoyed its benefits ever since. It cannot now be allowed to attack an officially approved condition of the merger while retaining at the same time all of its benefits. The impropriety of the attack is rendered twofold because it is not made in the merger proceeding but is attempted in a separate rate proceeding. While respondent also charges that, under the Commission's allocation of gasoline costs and the condition requiring the company to absorb them, the rate of return is reduced from 5.75% to 5.01% and is therefore unreasonable and confiscatory, we do not sustain that charge.

The judgment of the Court of Appeals accordingly is

*Reversed.*

MR. JUSTICE HARLAN took no part in the consideration or decision of this case.