**DEPARTMENT OF FISH AND GAME OF the STATE OF CALIFORNIA,** Petitioner,

v.

**FEDERAL POWER COMMISSION,** Respondent.

No. 20435.

United States Court of Appeals Ninth Circuit.

March 4, 1966.

Rehearing Denied June 8, 1966.

Thomas C. Lynch, Atty. Gen., Ralph W. Scott, Deputy Aty. Gen., San Francisco, Cal., for petitioner.

Richard A. Solomon, Gen. Counsel, Howard E. Wahrenbrock, Washington, D. C., for respondent.

Gregory A. Harrison, Malcolm T. Dungan, John E. Sparks, of Brobeck, Phleger, & Harrison, San Francisco, Cal., for intervenor.

Before MERRILL, BROWNING and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge:

In our previous decision in this case we remanded to the Commission "for further proceedings, not inconsistent with this opinion, relating to the cost of operating and maintaining the fish trapping and egg taking facilities, and for such clarification of Article 50 as it may desire to make." (Pacific Power & Light Co. v. FPC, 1964, 333 F.2d 689, 697.) Certiorari was sought by the Department of Fish and Game of the State of California. This was opposed by the Commission on the ground, *inter alia*, that the case was not ripe for review, the issues raised being premature because on remand the Commission might conclude that there are sound reasons for requiring Pacific to bear some or all of the expense of operating and maintaining the fish trapping and egg taking facilities. In a conditional cross-petition for certiorari, Pacific took the same position. Certiorari was denied (379 U.S. 969, 85 S.Ct. 667, 13 L.Ed.2d 562) without comment.

Pacific then moved the Commission for an extension of time within which to construct the required fish hatchery. The Commission denied the motion on June 23, 1965. Its order (33 F.P.C. ——) recites that there is no reason for delay because the size of the hatchery had been agreed to and the State had assured the Commission that it will operate the hatchery at full capacity whenever runs of anadromous fish provide eggs for full capacity operation. The Commission also clarified Article 50 of the license, saying, "We intend by Article 50 of the license that Pacific shall reimburse the State of California for 80 percent of the cost of actual operation and maintenance whether at full capacity or a lesser capacity." Thus the Commission complied with the second part of our mandate.

On July 22, 1965, the Department filed its "Petition for Rehearing, or for Any Other Appropriate Form of Relief", asking relief " * * * with respect to that portion of the Commission's Decisions and Orders, dated March 14, 1963 and August 19, 1963 (Opinions Nos. 381 and 381A, 29 F.P.C. 478) relating to Article 50 thereof, and to that portion of the Order Clarifying License, etc. dated June 23, 1965, which provides" the above clarification of Article 50. The petition also states: "Since there may be some doubt as to whether a petition for rehearing is the proper remedy * * * the Department seeks in lieu thereof any other form of relief which the Commission may deem appropriate * * * ."

The petition continues:

"The Court also remanded this matter to the Commission for further proceedings relating to the cost of operating and maintaining the fish trapping and egg collection facilities on the assumption 'that there is evidence now in the record, or that other evidence can be produced, that would justify the decision of the Commission as to the operation and maintenance of the fish trapping and egg taking facilities' (333 Fed.2d 689, 697 (col. 2)). No further proceedings have been taken by the Commission in this respect.

The Commission did not modify Article 50 in its clarifying Order of June 23, 1965. It left Article 50 intact. The Department takes this to mean that the Commission finds evidence now in the record which justifies the requirement that Pacific reimburse the Department for the major part of the cost of operating and maintaining the fish trapping and egg collecting facilities, irrespective of the Court's interpretation of the 1959 Agreement, which interpretation, parenthetically, is erroneous both in law and in fact. On the other hand, we are informed that Pacific takes the position that Article 50 needs no modification specifically deleting the assignment to it of part of the cost of operating and maintaining the fish trapping and egg collecting facilities, contending that the Court's construction of the contract automatically relieves it of that obligation irrespective of whether or not Article 50 is modified by the Commission.

"If the Commission agrees with Pacific's position then the Department seeks a rehearing by the Commission as a fact-finding tribunal on the question of the effect and interpretation of the 1959 Agreement by showing that there is evidence now in the record and that other evidence can be produced to justify the Commission in assessing the cost of operating and maintaining the fish trapping and egg taking facilities to Pacific, or prays for some other form of relief or hearing deemed by the Commission to be meet and proper."

There follow 31 numbered "Specifications of Error and Grounds for Relief." Each, in a somewhat different form, is an attack on the two orders that were reviewed in our previous decision, or on the decision itself, insofar as they relate to Article 50 of the license. None raises a new question. Nowhere does the petition state what evidence in the record, or what other evidence that might be produced, would justify the Commission,

on grounds of public policy, in disregarding the contract between the state and Pacific relating to the fish trapping and egg taking facilities.

The Commission, on August 20, 1965 (34 F.P.C. ——) denied the petition. In its opinion, the Commission refused to review the orders of March 14, 1963 and August 19, 1963. It concluded:

"The Department's contention with respect to the costs of the fish-trapping and egg-taking facilities are equally insubstantial. The Court held that the 1959 agreement between Pacific and the Department excused Pacific from liability to pay for any part of the operation and maintenance costs of the fish-trapping and egg-taking facilities. The Department in its petition for rehearing concedes that the Ninth Circuit so held, but alleges that the Court erred. The Department then requests that the Commission somehow corrected [sic] this alleged error. In effect this is a request that the Commission review and modify the decision of the Court which reviewed the Commission's decision pursuant to Section 313(b) of the Federal Power Act. This is an undertaking to which we would not aspire even if we were so disposed.

"Although the Ninth Circuit remanded the case to the Commission for further proceedings relating to the operation and maintenance costs of the fish-trapping and egg-taking facilities there is in actuality nothing more for the Commission to do. The Court had held that the Commission could not disregard the agreement between Pacific and the Department which the Court interpreted as freeing Pacific from any obligation to pay the operation and maintenance costs of these facilities."

The Department has now petitioned this court to review the orders of March 14, 1963, August 19, 1963, June 23, 1965 and August 20, 1965, as they relate to Article 50 of the license. Every ground asserted except two relates to the orders previously reviewed by this court or to

the merits of this court's decision on review. The exceptions are:

"1. The Commission failed to follow the remand of the Court in its decision of June 8, 1964 (333 F.2d 689) in that it did not consider evidence now in the record which would justify the decision of the Commission as to the operation and maintenance of the fish trapping and egg taking facilities.

"2. The Commission failed to follow the remand of the Court in said decision by failing and refusing to consider 'other evidence that can be produced' which would justify the decision of the Commission as to the operation and maintenance of the fish trapping and egg collecting facilities."

The Commission moves that we dismiss the petition or affirm, on the ground that the petition is frivolous. Pacific also moves to dismiss, on the same grounds. We conclude that the orders of June 23, 1965 and August 20, 1965 should be affirmed, and that, as to the orders of March 14 and August 19, 1963, the petition should be dismissed.

1. *The orders of March 14 and August 19, 1963.*

 These orders were fully reviewed in our prior decision. The time for review has long gone by (16 U.S.C. § 825l(b)). We affirmed them both except in the two respects set out at the beginning of this opinion. The Commission is bound by our decision. We think that we are also,[1] and we would not change it if we thought that we had the power.

2. *The June 23, 1965 order.*

This order complies with that portion of our mandate that suggested clarification of the 80 percent of capacity provision of Article 50 of the license, and denies a stay of the requirements of Article 49 for construction of a hatchery. The

Department's petition does not attack either action. It only attacks the power of the Commission to impose less than 100% of the cost upon Pacific. This question we decided adversely to the Department in our previous decision.

3. *The order of August 20, 1965.*

We construe the Commission's decision, as the Commission does in its moving papers, as (1) an acquiescence in our previous decision, (2) a construction of it as a nullification of that part of Article 50 of the license reading "and of the permanent fish trapping, collecting, holding, and spawn-taking facilities constructed at Iron Gate Dam," and (3) a determination that no showing was made that there is evidence in the record, or other evidence that can be produced, that would justify, on grounds of public policy, imposing on Pacific any part of the cost of operating and maintaining the fish trapping and egg taking facilities. (See 333 F.2d at 696–697)

The Department says that the Commission did not follow our mandate, which it construes as requiring a hearing on the last question. To this the Commission presents two answers.

 a. Insofar as the Department's petition sought such a hearing, it was not a petition for a rehearing. Rather, it was a petition for a hearing on this question, based upon the Department's construction of our mandate. The Department's own petition indicates an awareness of this. And Pacific's motion to strike and answer to the Department's petition, filed with the Commission, forcefully brought the matter to the Department's attention. The statute says (16 U.S.C. § 825l(b)):

"No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless

---

1. City of Tacoma v. Taxpayers, 1958, 357 U.S. 320, 335–341, 78 S.Ct. 1209, 2 L.Ed. 2d 1345. The Department says that one of its reasons for again raising the previously decided issues is that the Supreme Court may have denied certiorari solely because it agreed with the position of the Commission and Pacific that the petition for certiorari was premature. Whether that is so and what the consequences may be, are, we think, questions for that court.

there is reasonable ground for failure so to do."

No rehearing, following the August 20, 1965 order, was sought. Thus, it can be said that the question is not properly before us.[2]

The Department says, however, that all that the Commission did was to deny a petition for a rehearing so designated by the Commission in its order and that therefore the law has been followed. The Department also says that it construed the June 23, 1965 order as a determination that there was evidence in the record justifying imposing on Pacific at least 80% of the cost of operating and maintaining the fish-trapping and egg-taking facilities, because the Commission did not strike from Article 50 the language imposing that obligation on Pacific. It also argues that it construed our mandate as requiring the Commission, *sua sponte*, to hold a hearing and receive evidence on the question, and that the failure of the Commission to so order, evidenced by the June 23, 1965 order, was, in substance, a refusal to follow the mandate, so that the Department's petition was for a rehearing as to that refusal. It asks for a summary remand to the Commission with directions that such a hearing be held. It concludes that another petition for rehearing would be meaningless. We conclude that, because of the peculiar state of the record, there is indeed reasonable ground for the Department's failure to file another petition for a rehearing.

b. The Department misconstrues our mandate. We said that whether there is evidence in the record, or other evidence can be produced, is a question for the Commission, not for this court. This permits a further hearing; it does not require it. There is no showing that the Commission abused its discretion. No evidence, of either sort, was pointed to in the petition; there is nothing but a bare assertion. This, we think, is not enough to require a further hearing by the Commission. Absent some further showing, the Commission was entitled to assume that during the lengthy proceedings already had the Department had produced all of the relevant evidence that it could find. A reading of the petition confirms us in this belief.

The Commission would have done a neater job, and the subsequent confusion would have been avoided, if it had modified Article 50 of the license to conform to our mandate. As amended by the March 14, 1963 order (it has not since been amended), it reads:

"Article 50. Licensee shall reimburse the State of California Department of Fish and Game for 80 percent of the combined annual cost of operation and maintenance of the facilities and appurtenances constructed pursuant to Article 49 *and of the permanent fish trapping, collecting, holding, and spawn-taking facilities and appurtenances constructed at Iron Gate Dam.* Should Licensee and the State of California Department of Fish and Game fail to agree on the amount to be paid by the Licensee for this purpose, the Commission reserves the right to determine the amount of such annual payment, after notice and opportunity for hearing." (Emphasis added)

We held that the emphasized language was unauthorized on the record before us, and that the 80 percent language was unclear. The Commission, to conform to our mandate, could have inserted the clarification set out in its June 23, 1965 order in Article 50, and stricken the emphasized language. It did neither. But neither party has asked for this particular relief. We presume that the Commission could so amend, to conform to our mandate and to its orders of June 23 and

2. In Magnolia Petroleum Co. v. FPC, 5 Cir., 1956, 236 F.2d 785, 789, cert. denied, 1957, 352 U.S. 968, 77 S.Ct. 356, 1 L.Ed.2d 322, and Utah Power & Light Co. v. FPC, 10 Cir., 1964, 339 F.2d 436 the courts refused to review orders made upon a petition for rehearing because no rehearing of those orders had been sought before the Commission. Cf. FPC v. Colorado Interstate Gas Co., 1955, 348 U.S. 492, 75 S. Ct. 467, 99 L.Ed. 583.

of August 20, 1965, *sua sponte*, since it construes them as having this effect.

The statute (16 U.S.C. § 825*l*(b)) specifically authorizes us. to modify the Commission's order. We think that we should do so, to make explicit and clear what the Commission tells us that it intended. So doing will also make clear the result of the proceedings to date, to the end that, if the Department again seeks certiorari, there will be no doubt as to the finality of our own disposition of the proceeding.

As it relates to the orders of March 14 and August 19, 1963, the petition is dismissed. The order of June 23, 1965 is affirmed. The order of August 20, 1965 is modified by inserting therein, immediately after the words "The Commission Orders:" the following:

"The license for Project No. 2082, as amended, is further amended to provide as follows:

"Article 50. Licensee shall reimburse the State of California Department of Fish and Game for 80 percent of the combined annual cost of actual operation and maintenance whether at full capacity or a lesser capacity of the facilities and appurtenances constructed pursuant to Article 49. Should Licensee and the State of California Department of Fish and Game fail to agree on the amount to be paid by the Licensee for this purpose, the Commission reserves the right to determine the amount of such annual payment, after notice and opportunity for hearing."

As so modified, the order is affirmed.

The motion of the Department for a summary remand is denied. Both parties are agreed that the records in the prior proceedings in this court, our Nos. 18,853 and 18,954, should be made a part of the record in this proceeding. It is so ordered. The motion of the Commission for an extension of time in which to certify the record in this case to the court is, pursuant to the suggestion of its counsel, denied.