GETTY OIL COMPANY, a corporation, Mono Power Company, a corporation, Plaintiffs-Appellants,

v.

Cecil D. ANDRUS, Secretary of Interior of the United States of America, Geothermal Resources International, Inc., a corporation, and Chevron Oil Company, a corporation, Defendants-Appellees.

No. 77–3157.

United States Court of Appeals, Ninth Circuit.

Oct. 22, 1979.

**254**

Edward S. Renwick, Brien F. McMahon, Hanna & Morton, Los Angeles, Cal., for plaintiffs-appellants.

Edward J. Shawaker, Dept. of Justice, Washington, D. C., argued, for defendants-appellees; Donald E. Peterson, Pillsbury, Madison & Sutro, San Francisco, Cal., on brief.

Before HUFSTEDLER and SNEED, Circuit Judges, and WILLIAMS *, District Judge.

SNEED, Circuit Judge:

This is an appeal from a judgment of the district court upholding the ruling of the Secretary of Interior approving defendant Geothermal Resources International's (GRI) application to convert certain Placer mining claims into federal geothermal steam leases under the Geothermal Steam Act of 1970, 30 U.S.C.A. §§ 1001–1025, and the ensuing issuance of a lease to GRI. Two issues are presented on appeal. First, did the district court err in ruling that the doctrines of exhaustion of administrative remedies and waiver precluded the raising of the present contentions? Second, if the issues were properly raised, did the trial court correctly interpret the requirements of the Act and its regulations? Jurisdiction is provided by 28 U.S.C. § 1291. Because we agree with the trial court's interpretation of the Act and its regulation, we affirm the judgment of the trial court.

## I. FACTUAL BACKGROUND

The Act grants the Secretary the power to issue leases for the development of geothermal steam and resources on designated public lands. Under a competitive bidding process, the highest qualified bidder obtains a geothermal lease to the public lands. 30 U.S.C. § 1003; 43 C.F.R. §§ 3220.1–3220.6. The leasehold bidding process, however, is subject to grandfather conversion rights which permit qualified applicants to convert to geothermal leases their existing mineral leases, permits or mining claims in public lands with geothermal resources. To perfect these conversion rights, compliance with a two step process is required. Initially, an application must be filed with the Bureau of Land Management identifying the lease, permit or mining claim and showing that the applicant has made substantial expenditures for the exploration, development, or production of geothermal steam on "the lands for which a lease is sought or on

---

* Honorable Spencer M. Williams, United States District Judge for the Northern District of California, sitting by designation.

adjoining, adjacent or nearby lands, including both Federal and non-Federal lands." 43 C.F.R. § 3230.1–5; *see also id.* § 3230.3–2. The grandfather conversion rights applicant in due course is notified of the highest submitted bid. Within thirty days of receiving notice, the holder must exercise his option by paying an amount equal to the highest bid, paying the rental price for the first year, filing the required bonds, and submitting other specified documents. 43 C.F.R. § 3230.1–6(a)(2)(ii).

GRI filed an application to convert its Placer mining claims on June 22, 1972. Thereafter, on December 18, 1973, the Secretary announced that certain lands within the State of California would be open for competitive bidding, including the lands, designated as Leasing Unit No. 2, that GRI sought to convert. The announcement contained a declaration that Leasing Unit No. 2 was subject to the conversion rights of GRI. 38 Fed.Reg. 35029–31 (1973).

The Secretary approved GRI's application for conversion on January 14, 1974. 39 Fed.Reg. 2281–82 (1974). A week later, plaintiff-appellants, Getty Oil Company and Mono Power Company, submitted a bid on Leasing Unit No. 2 which later was selected as the high bid. On April 24, 1974, the Secretary notified GRI that appellants had submitted the high bid and that it had thirty days in which to exercise its conversion rights. GRI, in response, submitted all the documents required by 43 C.F.R. § 3202, and other subparts, to show that it was qualified to hold a geothermal lease. On July 10, 1974, the Secretary advised GRI that it had fulfilled the requirements necessary for the exercise of its conversion rights. GRI then relinquished its mining claims as consideration for the issuance of the lease.

Appellants first contested the proposed granting of GRI's geothermal lease on August 5, 1974. The protest alleged, *inter alia,* that the application for conversion rights was untimely filed, that GRI did not have "existing mining claims" upon which to base its application, that there was improper reliance upon development work relied upon by another applicant, and that under the Act there must be a full disclosure of all parties' interest, which GRI failed to do.

The Secretary, in his decision of February 13, 1975, indicated that appellants' protest was untimely due to their failure to object until after the application was approved. The Secretary, nonetheless, considered the contentions on their merits and rejected each of them.

Appellants brought suit in district court seeking judicial review. They alleged that GRI's failure to comply with the sole party in interest statement requirement of 43 C.F.R. § 3202.2–5 and its failure to establish "unity" between development work and the land on which it held mining claims invalidated its conversion.

The district court found that the Secretary's approval of GRI's application for conversion rights and his dismissal of appellants' protest was not an abuse of discretion and was fully supported by substantial evidence in the administrative record. *Getty Oil Co. v. Andrus,* 433 F.Supp. 1317 (C.D. Cal.1977). The court also held that a sole-party-in-interest statement was not required in order to exercise conversion rights and that the Act did not require a "unity" between the geothermal work and the mining claim on which GRI based its application. Moreover, the court concluded that contentions made by appellants not raised before the administrative hearing at the appropriate time were barred from review by the doctrines of exhaustion of administrative remedies and waiver. We hold that these doctrines do not bar review in this case and that each of appellants' claims lacks merit.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES AND WAIVER

■ The doctrines of exhaustion of administrative remedies and waiver are well established and serve fairly obvious purposes. "Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not

only has erred but has erred against objection made at the time appropriate under its practice." *United States v. L. A. Tucker Truck Lines*, 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952); *see also Federal Power Commission v. Colorado Interstate Gas*, 348 U.S. 492, 498–99, 75 S.Ct. 467, 99 L.Ed. 583 (1955). "A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented . . ." *Unemployment Compensation Commission of Territory of Alaska v. Aragon*, 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136 (1946). Thus, absent exceptional circumstances, a reviewing court will refuse to consider contentions not presented before the administrative proceeding at the appropriate time. *Widing Transportation Inc. v. I. C. C.*, 545 F.2d 652, 660 (9th Cir. 1976); *Reese Sales Co. v. Hardin*, 458 F.2d 183, 187 (9th Cir. 1972); *see Hormel v. Helvering*, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1941).

■■ Exhaustion of remedies and waiver, however, are doctrines to be invoked only when the administrative process has been completed. They are not designed to extinguish claims which, although not comprehensively or artfully presented in the early stages of the administrative process, are presented fully before the process ends. It has been said that "the touchstone of finality is suitability for judicial review." *Blanco Oil Company v. Federal Power Commission*, 158 U.S.App.D.C. 257, 259, 485 F.2d 1036, 1038 (D.C.Cir. 1973). The Administrative Procedure Act, 5 U.S.C. § 704, provides:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.

It is the imposition of an obligation or the fixing of a legal relationship that is the indicium of finality of the administrative process. *See, ECEE, Inc. v. Federal Power Commission*, 526 F.2d 1270, 1273 (5th Cir. 1976); *Chicago & Southern Airlines v. Waterman Steamship Corp.*, 333 U.S. 103, 113, 68 S.Ct. 431, 92 L.Ed. 568 (1948).

■ These principles clearly indicate that the Secretary quite properly considered appellants' claims although the protest followed the Secretary's recognition in January, 1974 of GRI's grandfather rights. Another step of the two step process remained to be completed. The Secretary's suggestion that his recognition of these rights made appellants' protest untimely is supported neither by the principles set forth above nor by the regulations themselves. The pertinent regulation is 43 C.F.R. § 4.450–2 and reads as follows:

> Where the elements of a contest are not present, any objection raised by any person to any action proposed to be taken in any proceeding before the Bureau will be deemed to be a protest and such action thereon will be taken as is deemed to be appropriate in the circumstances.

■ The contention that the above principles bar consideration of the appellants' "sole-party-in-interest" and its "unity" issues must also fail. While it is true that appellants refined their arguments as the administrative proceedings progressed, this occurred in part because GRI's January, 1974 conversion application did not fully reveal either all the parties in interest in the claims it sought to convert or the chain of title of such claims. This process of refinement very likely was motivated by the appellants' desire to thwart GRI's conversion, but that provides no reason to invoke the principles of exhaustion of remedies and waiver. In any event, an examination of the Secretary's February 13, 1975 decision leads us to conclude that the issues appellants seek to have reviewed by the court were sufficiently raised in the administrative proceeding to preclude a disposition of this case on grounds of waiver or failure to exhaust administrative remedies.

## III. MERITS

### A. *Sole-Party-In-Interest Issue.*

■ We agree with the district court that GRI was not required to supply the statement required by 43 C.F.R. § 3202.2–

5.[1] This regulation imposes its duties on those who make application for a lease, not on those who apply to convert an existing lease to a geothermal lease. Apparently GRI's interpretation does not conflict with that of the Secretary. He was satisfied that GRI had complied with all pertinent regulations and requirements. Appellants' suggested interpretation is not fanciful, but neither is it plainly required by the regulation. The fairly strict reading of 43 C.F.R. § 3202.2–5 employed by the district court was not erroneous.

### B. *Unity Issue.*

Appellants insist that inasmuch as GRI relied in its application on geothermal work done by it, or its corporate ancestor, and a mining claim acquired from an unrelated predecessor ten years after the geothermal work, there is lacking the "unity" of geothermal work and claim that Congress intended to exist when it enacted the Geothermal Steam Act of 1970. As the appellants see it, only geothermal "pioneers" who developed geothermal resources with respect to mining claims or leases of public lands under the pre-1970 circumstances, in which geothermal steam was not subject to location, should be given conversion rights. The difficulty with this position is that the Act does not so provide.

■ The requirements for conversion to a geothermal lease pursuant to the Act, 30 U.S.C. § 1003, are as follows:

(1) The applicant for conversion must be a lessee or permittee or claimant, *or their successor in interest*, with respect to "lands which were on September 7, 1965 subject to valid leases or permits issued under the Mineral Leasing Act of February 20, 1920 . . . or under the Mineral Leasing Act of Acquired Lands . . . [and] located on or prior to September 7, 1965 . . . "

(2) The applicant must show "to the reasonable satisfaction of the Secretary that substantial expenditures for the exploration, development, or production of geothermal steam have been made by the applicant who is seeking conversion, on lands for which a lease is sought or on adjoining, adjacent, or nearby Federal or non-Federal lands."

■ Those requirements make clear that, while the applicant must have incurred the substantial geothermal exploration expenses, it is not necessary that he have acquired the lease or permit through location prior to September 7, 1965. It is enough if his predecessor in interest so acquired the lease or permit. The only "unity" that is required is that the "applicant" must have done the geothermal exploration. Appellants do not now question the attribution of such geothermal work as was done by GRI's corporate ancestors to GRI.[2]

The Act easily could have been drafted to reflect what appellants assert was the intention of Congress. A recasting of subsections (a) and (e) of section 1003 to make clear that *the applicant* must have located his claim prior to September 7, 1965 *and* have done the required geothermal exploration thereon or "on adjoining, adjacent, or nearby Federal or non-Federal lands" would have been simple. Congress chose not to cast its language in that fashion, but instead it adopted a structure which unmistakably yields the meaning we here apply. To us the language of the Act is clear; we

1. § 3202.2–5 Showing as to sole party in interest.

   Each application must indicate whether the applicant is the sole party in interest. Where the applicant is not the sole party in interest, separate statements must be signed by each of the parties and by the applicant setting forth the nature of the agreement between them. All interested parties must furnish evidence of their qualifications to hold such lease interest. These separate statements must be filed in the proper BLM office with the application, except as provided in § 3211.2 of this chapter.

2. 43 C.F.R. § 3230.1–5(a) states that the required geothermal expenditures must be made "either by the applicant seeking conversion or by his predecessors in interest." It is not necessary for us to pass judgment on the correctness of this regulation inasmuch as the expenditures here were made either by GRI or its corporate ancestor. Therefore, we reserve judgment on whether this regulation correctly interprets section 1003(e), 30 U.S.C. § 1003(e).

258

need not search the legislative history for clues as to meaning under these circumstances. *See, United States v. Oregon*, 366 U.S. 643, 648, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961).

### C. *Conclusion.*

It follows that the district court was correct in holding that the Secretary's dismissal of the appellants' protest was not an abuse of discretion and was supported by substantial evidence in the administrative record. 5 U.S.C. §§ 701–706.

Affirmed.