**NEW JERSEY ZINC COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent**

Philadelphia Electric Company, Carbonaire Company, Inc., Intervenors.

**TENNESSEE GAS PIPELINE COMPANY, A DIVISION OF TENNECO INC., Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

Commonwealth Gas Company, Intervenor.

Nos. 87–1262, 87–1294, 87–1304 and 87–1367.

United States Court of Appeals, District of Columbia Circuit.

Argued March 8, 1988.

Decided April 15, 1988.

Michael T. Mishkin, Washington, D.C., for petitioner in No. 87–1262.

Kathleen T. Puckett, Houston, Tex., with whom Terence J. Collins, Washington, D.C., and Robert W. Baker, Houston, Tex., were on the brief, for petitioner in Nos. 87–1294, et al.

James Howard and Robert H. Benna, Washington, D.C., also entered appearances, for petitioner in Nos. 87–1294, et al.

Joanne Leveque, F.E.R.C., with whom, Catherine C. Cook, General Counsel and Jerome M. Feit, Sol., F.E.R.C., Washington, D.C., were on the brief, for respondent in No. 87–1262.

Frank R. Lindh, F.E.R.C., with whom, Catherine C. Cook, General Counsel, and Jerome M. Feit, Sol., F.E.R.C., Washington, D.C., were on the brief, for respondent in Nos. 87–1294, et al.

Joanne Leveque, John Estes, and Hanford O'Hara, F.E.R.C., Washington, D.C., also entered appearances, for respondent in Nos. 87–1294, et al.

Charles H. Shoneman, Washington, D.C., was on the brief, for intervenor, Carbonaire Co., Inc. in No. 87–1262.

Robert A. MacDonnell, Philadelphia, Pa., entered an appearance, for intervenor, Philadelphia Elec. Co. in No. 87–1262.

Joseph M. Oliver, Jr. and M. Lisanne Crowley, Washington, D.C., were on the brief, for intervenor, Commonwealth Gas Co. in Nos. 87–1294, et al.

Before RUTH BADER GINSBURG and BUCKLEY, Circuit Judges, and RE,* Chief Judge (Court of International Trade).

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

---

* Of the United States Court of International Trade, sitting by designation pursuant to 28 U.S.C. § 293(a).

RUTH BADER GINSBURG, Circuit Judge:

Petitioners New Jersey Zinc Co. and Tennessee Gas Pipeline Co. seek review of four Federal Energy Regulatory Commission (Commission or FERC) orders, each of which imposed durational limitations on requested certificates of public convenience and necessity.[1] For the reasons stated below, we deny New Jersey Zinc's petition for review in No. 87–1262 and dismiss Tennessee's petitions in Nos. 87–1304 and 87–1367. We grant Tennessee's petition for review in No. 87–1294 and remand that order for FERC's reconsideration.

## I.

A gas pipeline may obtain authorization to provide gas transportation services under the Natural Gas Act, 15 U.S.C. §§ 717–717w (1982) (NGA), or the Natural Gas Policy Act, 15 U.S.C. §§ 3301–3432 (1982) (NGPA). Section 7(c) of the NGA, 15 U.S.C. § 717f(c), prohibits natural gas transportation or sales absent a certificate of public convenience and necessity authorizing such activity. Under the Commission's current administration of section 7(c), a pipeline may request individual certificates sanctioning specific transportation services, and/or may apply for a blanket certificate pursuant to FERC Order No. 436.[2] Blanket certificate authorization permits a pipeline to offer nondiscriminatory transportation services on a self-implementing basis. In addition, some types of open access transportation services may be provided under NGPA section 311(a), 15 U.S.C. § 3371(a).

On September 30, 1986, Transcontinental Gas Pipe Line Corp. (Transco) applied for an individual section 7(c) certificate authorizing it to provide firm (*i.e.*, uninterruptible) gas transportation for New Jersey Zinc Co. (Zinc) until November 15, 1990.[3] On November 7, 1986, the Commission granted a limited term certificate authorizing the requested service through April 15, 1987. *Transcontinental Gas Pipe Line Corp.*, 37 F.E.R.C. ¶ 61,112 (Nov. 7, 1986). Following Zinc's timely application for rehearing, on April 17, 1987, FERC amended Transco's certificate to remain in effect "until the earlier of one year from the date of this order or the date Transco accepts a blanket certificate." *Transcontinental Gas Pipe Line Corp.*, 39 F.E.R.C. ¶ 61,026, at 61,062 (Apr. 17, 1987).[4] Zinc challenges the one-year term limitation.[5]

---

1. *New Jersey Zinc Co. v. FERC*, No. 87–1262, was briefed separately from, but argued in tandem with, *Tennessee Gas Pipeline Co. v. FERC*, Nos. 87–1294, 87–1304, and 87–1367. We consolidate the four review petitions for disposition in this opinion.

2. 50 Fed.Reg. 42,408 (1985), *modified* 50 FED.REG. 52,217 (1985) (Order No. 436–A); 51 FED.REG. 6,398 (1986) (Order No. 436–B). Order No. 436 was upheld in substantial part in *Associated Gas Distribs. v. FERC*, 824 F.2d 981 (D.C.Cir.1987); the panel remanded the case, however, for further proceedings regarding components of the Order not at issue in the instant petitions. The Commission repromulgated most of Order No. 436 in Order No. 500, 52 FED.REG. 30,334 (1987), *modified*, 52 FED.REG. 35,539 (1987); 52 FED.REG. 39,630 (1987) (Order No. 500–B); 52 FED.REG. 48,986 (1987) (Order No. 500–C); 53 FED.REG. 8,439 (1988) (Order No. 500–D). Order No. 436 was in effect at all times relevant to the present cases, and we therefore refer to it, rather than to Order No. 500, throughout this opinion.

3. Transco requested authorization to transport 4000 Mcf (thousand cubic feet) per day; FERC authorized 3000 Mcf per day because that was the quantity specified in the Transco–Zinc Transportation Agreement. *Transcontinental Gas Pipe Line Corp.*, 37 F.E.R.C. ¶ 61,112, at 61,273 (Nov. 7, 1986).

4. Transco applied for an Order No. 436 blanket certificate on March 28, 1986; that application was pending at the time of FERC's original (November 7, 1986) order in *Zinc*. *Transcontinental Gas Pipe Line Corp.*, 38 F.E.R.C. ¶ 61,166 (Feb. 20, 1987). By the date of the Commission's April 1987 order on rehearing in *Zinc*, Transco had modified its original blanket authorization proposal, the Commission had approved the application with further modifications, *see id.*, and Transco had rejected the certificate as modified by FERC but had also requested additional time in which to accept the certificate. *See Transcontinental Gas Pipe Line Corp.*, 39 F.E.R.C. ¶ 61,026, at 61,062 (Apr. 17, 1987). Thus, when the Commission rendered its April 17, 1987 order, FERC had reason to believe Transco might eventually commence transportation services under Order No. 436.

5. Intervenor Carbonaire Company, Inc. invites court review of a separate provision of the Commission's April 17 order, 39 F.E.R.C. ¶ 61,026,

Tennessee Gas Pipeline Co. (Tennessee) applied for an Order No. 436 blanket certificate on December 8, 1986. At the time of that application Tennessee had pending three individual section 7(c) certificates; Tennessee's application for a blanket certificate remained pending when the three specific transportation service certificates issued. In two of the three individual service section 7(c) applications, *Chevron,* No. 87–1304, filed August 27, 1986, and *Texas Gas Exploration Corp. (TGE)*, No. 87–1367, filed June 17, 1986, Tennessee requested certificates for terms of five years. The Commission imposed two durational limitations (in addition to other conditions) on each certificate. In *Chevron,* issued February 24, 1987, the Commission limited authorization to a term of two years or until Tennessee accepted a blanket certificate, whichever occurred first. *Tennessee Gas Pipeline Co.,* 38 F.E.R.C. ¶ 61,180 (Feb. 24, 1987). In *TGE,* issued March 16, 1987, FERC approved the requested service for a term of one year or until Tennessee accepted a blanket certificate, whichever occurred first. *Tennessee Gas Pipeline Co.,* 38 F.E.R.C. ¶ 61,259 (Mar. 16, 1987).

In the third section 7(c) specific transportation service application, *Commonwealth,* No. 87–1294, filed October 7, 1986, Tennessee requested an individual certificate for a term of fourteen years. On December 24, 1986, the Commission limited authorization of the transportation to a term of two years, and imposed no blanket certificate limitation. *Tennessee Gas Pipeline Co.,* 37 F.E.R.C. ¶ 61,291 (Dec. 24, 1986).

Tennessee timely filed petitions for rehearing in all three cases. In each instance the Commission declined to alter the fixed term limitations originally imposed.[6] On June 19, 1987, Tennessee accepted an Order No. 436 blanket certificate; the individ-

ual *Chevron* and *TGE* certificates, each conditioned on that event, thus expired by their own terms on that date. Tennessee now asks the court to examine both the fixed term and blanket certificate limitations, seeking in each case individual section 7(c) authorization for the full duration originally requested.

## II.

*No. 87–1262:* The Commission's explanation of the fixed term limitation imposed on Transco's authorization to provide firm transportation service for Zinc was encapsulated in a single sentence: "The limited term of one year is consistent with the policy we have adopted in similar orders issuing certificates under section 7(c) of the Natural Gas Act." 39 F.E.R.C. ¶ 61,026, at 61,062. The policy to which FERC referred in the *Zinc* order was articulated more expansively in *Florida Gas Transmission Co.,* 41 F.E.R.C. ¶ 61,267 (Dec. 4, 1987):

[O]ur policy has been to authorize transportation services under individual section 7(c) transportation certificates for one year. This policy is based on our concern about the potential for undue discrimination in proposals to certificate individual transportation arrangements under section 7(c) of the Natural Gas Act (NGA). It is also based on the fact that the industry is currently in a transition period pending ultimate implementation of the blanket transportation policies adopted in Order Nos. 436 and 500.

*Id.* at 61,681 (footnote omitted); *see* Brief for FERC, No. 87–1262, at 17. We can discern the same purpose at work in the *Zinc* order, *see Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 851 (D.C.Cir. 1970) (agency findings "of less than ideal clarity" will be upheld "if the agency's path

---

which imposed an identical one-year term/blanket certificate limitation on a certificate Transco sought authorizing service for Carbonaire. Ordering Paragraph (C), *id.* at 61,062. Carbonaire did not independently petition for review, indeed it did not even move to intervene in Zinc's case until nearly a month after the 60–day statutory period for filing a petition for review had run. Because Carbonaire did not timely file a petition for review, we lack authority to consid-

er its request. *See* NGA section 19(b), 15 U.S.C. § 717r(b); *Michigan Consol. Gas Co. v. FPC,* 167 F.2d 264 (D.C.Cir.1948).

6. *Tennessee Gas Pipeline Co.,* 39 F.E.R.C. ¶ 61,127 (May 6, 1987) (*Chevron*); *Tennessee Gas Pipeline Co.,* 39 F.E.R.C. ¶ 61,312 (June 17, 1987) (*TGE*); *Tennessee Gas Pipeline Co.,* 39 F.E.R.C. ¶ 61,126 (May 6, 1987) (*Commonwealth*).

may reasonably be discerned"), but express our concern that the Commission came perilously close to the intolerably terse. *Cf. id.* at 852 (cautioning agencies against "cross[ing] the line from the tolerably terse to the intolerably mute").

Zinc directs our attention to FERC's awareness of its special need for a constant supply of natural gas. The zinc oxide furnaces used by Zinc will begin to disintegrate if allowed to cool; a minimum supply of 1000 Mcf (thousand cubic feet) per day is required to avoid such damage. FERC's November 7, 1986 order granting certification through April 15, 1987 rested on the Commission's recognition of Zinc's urgent need for reliable service through the 1986–87 winter heating season. 37 F.E.R.C. ¶ 61,112, at 61,275. The conditions FERC acknowledged in November 1986 persist, Zinc urges, and warrant 7(c) certification until November 15, 1990, as requested.

■ Transco may apply for renewal of its certificate for service to Zinc, the Commission points out; FERC has merely positioned itself to review the present arrangement annually, as a safeguard against any manifestation of undue discrimination. Section 7(e) of the NGA permits the Commission to issue certificates "authorizing the whole or any part of the ... service" for which certificate authority is sought. 15 U.S.C. § 717f(e). The decision to review individual certificates periodically is reasonably related to FERC's concern to assure nondiscriminatory access to transportation. As to the precise interval selected, we have no cause to second-guess the Commission's expert judgment, and we recognize that on questions of this order, "a certain amount of arbitrariness goes with [the] territory." *Associated Gas Distribs. v. FERC,* 824 F.2d 981, 1044 (D.C.Cir.1987) (referring to grandfathering provisions).

■ There remains Zinc's objection that FERC failed to respond point-by-point to Zinc's arguments that its unique situation warrants an exception to the one-year policy. We have already observed that the Commission's cryptic explanation is hardly a model worthy of retention. We cannot say, however, that the Commission's adherence to a standard limitation, or its reliance without elaboration on an existing policy and rationale in refusing to treat Zinc exceptionally, indicates capriciousness. We therefore deny Zinc's petition for review.

### III.

■ In *Commonwealth,* No. 87–1294, FERC imposed only a fixed term limitation on Tennessee's requested individual section 7(c) certificate; no blanket certificate limitation accompanied the two-year term. Tennessee had a blanket certificate application pending on the date the initial *Commonwealth* order issued.[7] Thus the Commission might have anticipated what in fact transpired less than six months later: when the *Commonwealth* 7(c) certificate still had a year and a half to run, FERC approved, and Tennessee accepted, authorization for Order No. 436 transportation services. *Tennessee Gas Pipeline Co.,* 39 F.E.R.C. ¶ 61,337 (June 18, 1987) (accepted by Tennessee June 19, 1987).

The Commission's position that limited term certificates check discriminatory practices, Tennessee urges, will not do to justify the limitation in *Commonwealth;* that rationale no longer obtains, Tennessee asserts, once a pipeline has accepted a blanket certificate. Under the Order No. 436 authorization the transporter must provide open access, nondiscriminatory services; there is no reason therefore, Tennessee contends, to conduct periodic review ostensibly to accomplish the same result. Where individual service 7(c) authorization runs concurrently with a blanket certificate, Tennessee concludes, the individual certificate rationally must be granted for the full duration requested. We are not prepared at this juncture to embrace Ten-

---

7. One Commissioner dissented from the December 24, 1986 *Commonwealth* order, noting that Tennessee had begun section 311 service and had announced, on December 3, its intention to file for Order No. 436 authorization on or be-

fore December 8. *Tennessee Gas Pipeline Co.,* 37 F.E.R.C. ¶ 61,291, at 61,875–76 (Dec. 24, 1986). It is clear, therefore, that FERC was aware of Tennessee's pending blanket certificate application.

nessee's bottom line; we agree, however, that the Commission has failed to provide an adequate explanation for the *Commonwealth* fixed term limitation.

We note initially that this case differs significantly from *Zinc, supra.* In *Zinc* the Commission imposed alternative limitations: the certificate would expire at the earlier of one year or the date Transco accepted a blanket certificate. Here, only a fixed term limitation was imposed, and that sole limitation was ordered at a time when the coexistence of blanket certificate and individual service certification was foreseeable.

FERC argues, as it did in *Zinc,* that term limitations trigger periodic review of a pipeline's practices, enabling the Commission to "detect and eliminate preferences and other forms of discrimination." Brief for FERC, Nos. 87–1294, 87–1304, and 87–1367, at 41. In *Zinc* we defer to the agency's determination of the appropriate intervals for such review. We cannot yet conclude, however, that FERC applied its limited term policy in a reasoned manner to the *Commonwealth* case. The Commission, we assume, had cause—albeit undisclosed—to refrain from imposing a blanket certificate limitation on the *Commonwealth* authorization, in other words, a reason to create the potential for the individual certificate to coexist with blanket authorization.[8] FERC's undue discrimination rationale, however, is not cogent here, for we are not told why the Order No. 436 requirements fail to provide, without more, the necessary prophylactic against discrimination. The Commission's order in *Commonwealth* may be justified on a ground that at this stage escapes our identification. We therefore remand the *Commonwealth* case to FERC for its reconsideration and for amplification of its reasoning.

### IV.

Tennessee challenges both the fixed term and blanket certificate limitations imposed in *Chevron* and *TGE,* Nos. 87–1304 and 87–1367. The Commission argues in response that Tennessee's objections to the blanket certificate limitations may not be aired in court because they were not urged before the Commission in Tennessee's applications for rehearing. Nor are the fixed term limitations currently reviewable, FERC maintains, because they have become moot; by their own terms, FERC points out, the *Chevron* and *TGE* authorizations expired when Tennessee accepted a blanket certificate. We agree with the Commission that these cases, as currently postured, are not subject to court review; accordingly, we dismiss Tennessee's petitions challenging the *Chevron* and *TGE* orders.

█ Section 19(b) of the NGA, 15 U.S.C. § 717r(b), provides that "[n]o objection to the order of the Commission shall be considered by the [reviewing] court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do." Tennessee argues that the overarching objection it raised on application for rehearing in *Chevron* and *TGE* was that FERC had not issued the certificates for the full duration requested; that objection, Tennessee contends, encompasses both the fixed term and blanket certificate limitations. Examination of Tennessee's applications, however, shows that they feature only the fixed term limitation.[9] We set out here the specifications of error in the two cases. "The Commission erred in limiting the term of the certificate authorization to two years." *Chevron,* Joint Appendix (J.A.) 149. "The Commission erred in limiting the term of the certificate authorization to one year." *TGE,* J.A. 360. There is no reference to the blanket certificate limitation in the body of Tennessee's arguments; Tennessee quotes portions of FERC's original orders that do not contain the blanket certificate limitation. *See* J.A. 150, 362.

---

**8.** Neither the original *Commonwealth* order nor the order on rehearing offers any explanation why the Commission did not impose a blanket certificate limitation on the authorized service.

**9.** The applications for rehearing in *Chevron* and *TGE* are remarkably similar to the application for rehearing filed in *Commonwealth,* in which no blanket certificate limitation was imposed.

Similarly, Tennessee's conclusions specifically address only the term limitations: "Since the Commission has articulated no reasonable justification in the February 24 order for its decision not to issue a certificate for the full duration requested, the two year term limitation is an unreasonable condition and must be removed." *Chevron*, J.A. 151. "Since the Commission has articulated no reasonable justification in the March 16 order for its decision not to issue a certificate for the full duration requested, the one year term limitation is an unreasonable condition and must be removed." *TGE*, J.A. 364.

◼ In *FPC v. Colorado Interstate Gas Co.*, 348 U.S. 492, 75 S.Ct. 467, 99 L.Ed. 583 (1955), the Supreme Court rejected an endeavor to overcome the 19(b) stricture not far afield from the one here essayed by Tennessee. In that case, the specific objection raised on petition for rehearing and rejected by the Commission was also rejected by the court of appeals. But the court embraced another objection that yielded the same "end result." The Supreme Court held that 19(b) must be applied punctiliously. We adhere to that approach.

Tennessee next contends that there is a reasonable ground for its failure to argue before the Commission, as it does in court, that the blanket certificate limitation represents a change in FERC policy: FERC's orders contained no discussion of, or rationale for, the blanket certificate limitation. The objection is inapt. Tennessee did not lack capacity or cause to object to the blanket certificate limitation on the very ground it now tenders, namely, that FERC had provided no explanation for its decision to impose that limitation.

Tennessee's final argument is that its broad objection to FERC's decision not to issue the certificates for the duration requested gave the Commission ample opportunity to reconsider both limitations imposed in the original order; an opportunity for Commission reconsideration, Tennessee contends, is the purpose of the section 19(b) stipulation. Tennessee's argument is foreclosed by this court's decision in *Asarco, Inc. v. FERC*, 777 F.2d 764 (D.C.Cir.1985). The court there declined to consider an objection not raised by petitioner but in fact placed before the Commission by another party to the same proceeding. *Id.* at 773–74. We reiterate then-Judge Scalia's observation in *Asarco* that "[a] mandatory petition-for-rehearing requirement, with or without the additional requirement of raising the very objection urged on appeal, is virtually unheard-of, but both requirements happen to exist in all three of the major statutes administered by FERC," [10] and must be respected by the court. *Id.* at 774. We conclude that this court may not hear Tennessee's objections to these blanket certificate limitations.

◼ The propriety of FERC's imposing fixed term limitations in *Chevron* and *TGE* is a moot question, the Commission argues, because those certificates expired as a consequence of Tennessee's acceptance of an Order No. 436 blanket certificate. We agree. Because of the alternative and operative blanket certificate limitation, Tennessee would be in no different position today had FERC set the fixed term at two, five, or any other number of years.

Tennessee contends that these certificates fall within the category of "short term orders, capable of repetition, yet evading review." *See Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). This exception to mootness doctrine does not apply here. Though the challenged certificates are effective for relatively short terms, the present question does not evade review. The propriety of fixed term limitations has been properly presented, and considered on the merits, in the *Zinc* and *Commonwealth* cases, *supra*. Tennessee's petitions for review in *Chevron* and *TGE* therefore are dismissed.

## CONCLUSION

For the reasons stated: 1) the petition for review in No. 87–1262 is denied; 2) the

---

**10.** Provisions similar to section 19 of the NGA appear in section 506 of the NGPA, 15 U.S.C. § 3416, and section 313 of the Federal Power Act, 16 U.S.C. § 825*l* (1982).

petition in No. 87–1294 is granted and that case is remanded to the Commission for reconsideration; and 3) the petitions in Nos. 87–1304 and 87–1367 are dismissed.

*It is so ordered.*